Cory A. Talbot (#11477)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
catalbot@hollandhart.com

Holly Stein Sollod (*pro hac vice*)
HOLLAND & HART LLP
555 17th Street, Suite 3200
P. O. Box 8749
Denver, Colorado 80201-8749
Telephone: (303) 295-8000
hsteinsollod@hollandhart.com

Robert N. Driscoll (*pro hac vice*)
Alfred D. Carry (*pro hac vice*)
MCGLINCHEY STAFFORD PLLC
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
Telephone: (202) 802-9999
Facsimile: (202) 403-3870
rdriscoll@mcglinchey.com
acarry@mcglinchey.com

*Attorneys for Defendant Patrick M. Byrne*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN RE OVERSTOCK SECURITIES LITIGATION | **DEFENDANT PATRICK BYRNE'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED CONSOLIDATED COMPLAINT** |
| THE MANGROVE PARTNERS MASTER FUND, LTD., | |
| Lead Plaintiff, | |
| vs. | Consol. Case No. 2:19-cv-709-DAK-EJF |
| OVERSTOCK.COM, INC., et al., | Judge Dale A. Kimball<br>Magistrate Judge Evelyn Furse |
| Defendants. | |

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................................ 1

II. ARGUMENT .............................................................................................................. 3

    A. Plaintiff Fails to State a Claim in Count 3 against Byrne for Control Person Liability under Section 20(a) ........................................................... 3

        1. Plaintiff Has Failed to Establish a Primary Violation of the Securities Laws ................................................................................ 3

        2. Even if There Had Been a Primary Violation, Plaintiff Alleges Byrne was a Primary Violator, Precluding Liability as a Control Person ............................................................................... 3

    B. Plaintiff Fails to State a Claim in Count 4 against Byrne under Section 20A ............................................................................................... 4

        1. Plaintiff Has Not Pled a Predicate Violation of the Exchange Act ............. 4

        2. Plaintiff Is Not a Contemporaneous Trader Under Section 20A Because it Purchased Overstock Shares Before Byrne's Sales .................. 5

    C. Plaintiff Continues to Misrepresent Byrne's Statements, Draw False Connections, and Make Unsupported Arguments ................................................. 6

III. CONCLUSION ............................................................................................................ 9

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Alfus v. Pyramid Technology Corp.*,
745 F. Supp. 1511 (N.D. Cal. 1990) .................................................................................. 6

*Chapman v. Mueller Water Prod., Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020) ................................................................................ 4

*Holmes v. Cty. of Montgomery*,
No. 1:19cv0617, 2020 WL 1188026 (N.D.N.Y. Mar. 12, 2020) ........................................ 4

*In re Crocs Sec. Litig.*,
774 F. Supp. 2d 1122 (D. Colo. 2011) ............................................................................... 5

*In re Enron Sec., Derivative & ERISA Litig.*,
258 F. Supp. 2d 576 (S.D. Tex. 2003) ........................................................................... 5, 6

*In re Myriad Genetics, Inc. Sec. Litig.*,
No. 2:19-cv-00707-DBB-DBP, 2021 WL 977770 (D. Utah Mar. 16, 2021) ................. 5, 6

*In re Overstock Sec. Litig.*,
No. 2:19-cv-709-DAK-DAO, 2020 WL 5775845 (D. Utah Sept. 28, 2020) ............. *passim*

*Killoran v. Westhampton Beach Sch. Dist.*,
No. 18-cv-3389(JS)(SIL), 2020 WL 1325572 (E.D.N.Y. Feb. 12, 2020),
*rep. & rec. adopted*, 2020 WL 1433647 (E.D.N.Y. Mar. 11, 2020) ................................... 4

*Lane v. Page*,
649 F. Supp. 2d 1256 (D.N.M. 2009) ................................................................................ 3

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .............................................................................................. 9

*Sapuppo v. Allstate Floridian Ins. Co.*,
739 F.3d 678 (11th Cir. 2014) ............................................................................................ 4

*Set Capital LLC v. Credit Suisse Grp. AG*,
No. 19-3466-CV, 2021 WL 1619620 (2d Cir. Apr. 27, 2021) ........................................... 2

Statutes and Regulations

17 C.F.R. § 230.144 ................................................................................................................... 2

17 C.F.R. § 240.16a-3 ................................................................................................................ 8

## I. PRELIMINARY STATEMENT

With respect to Defendant Dr. Patrick M. Byrne ("Byrne"), The Mangrove Partners Master Fund, Ltd. ("Plaintiff")'s opposition implicitly acknowledges that its amendments do nothing to cure the pleading deficiencies in the individual claims of Counts 3 and 4. The Court's prior legal analysis dismissing these counts is equally applicable to the newly-minted allegations of the Amended Consolidated Complaint ("AC"). Indeed, the best Plaintiff can muster is a half-hearted attempt—in footnote 41 on the last page of its 40-page brief—to "preserve the issue" for appeal by reasserting two previously-rejected arguments that: (1) Byrne should be subject to "control person" liability notwithstanding that he is also an alleged primary violator; and (2) the stock sales alleged to be the basis for the insider trading claim were "contemporaneous" even though they took place *after* Plaintiff's purchases, a fact this Court found extinguishes the claim as a matter of law.

Of course, this Court's prior dismissal of Counts 3 and 4 was grounded in the correct legal conclusions that alleged primary violators of federal securities laws cannot also be subject to control person liability under Section 20(a), and that a defendant's stock sales that take place after a plaintiff's purchases cannot be "contemporaneous" for purposes of an insider trading violation under Section 20A. *In re Overstock Sec. Litig.*, No. 2:19-cv-709-DAK-DAO, 2020 WL 5775845, at **13-14 (D. Utah Sept. 28, 2020). These uncontroversial legal conclusions are not impacted by Plaintiff's scramble to add new facts through vague allegations of "Confidential Witness 0," who was conveniently discovered just as Plaintiff acknowledged that "Confidential Witness 1," who provided Plaintiff's foundational factual allegations for the last round of briefing, was not even employed by Overstock during the Class Period and could not credibly support Plaintiff's claims. Given this posture, the Court's task is a simple one with respect to the

claims alleged against Byrne in Counts 3 and 4: apply the prior legal analysis to these claims, which have not materially changed, and reach the same conclusion.

The Court should also reach the same result after assessing the other amendments to the complaint in Counts 1 and 2. Count 1 remains a textbook example of pleading fraud by hindsight and it does not satisfy the PSLRA. Further, Count 2's allegations about the "locked-up feature" of the digital dividend being improper *per se* is simply a creative reframing of the prior pleading that does not supply the necessary element of deception that this Court has already held is required to plead a market manipulation claim. As this and other courts have observed, "[d]eception is the gravamen of a claim for market manipulation," and the AC still contains no allegation that Overstock or Byrne injected inaccurate information into the market regarding the digital dividend. *See, e.g., Set Capital LLC v. Credit Suisse Grp. AG*, No. 19-3466-CV, 2021 WL 1619620, at *7 (2d Cir. Apr. 27, 2021); and *In re Overstock Sec. Litig.*, 2020 WL 5775845, at **10-11.[1]

---

[1] Plaintiff points the Court to the *Set Capital* decision as supplemental authority for the proposition that a manipulative act only requires a plaintiff to plead manipulative intent. (Dkt. 130.) However, *Set Capital* says no such thing and actually undermines Plaintiff's position. As counsel knows (*Set Capital* was brought and argued by the exact same counsel as in this case), the Second Circuit found deception because the defendant falsely denied—in its offering documents—having knowledge of the near certainty that its hedging activities would depress the value of the exchange traded notes it issued. *See Set Capital*, 2021 WL 1619620, at *7. There, Credit Suisse inaccurately and falsely stated in its offering documents that "we and our affiliates have no reason to believe that our . . . hedging activities will have a material impact" on the value of XIV Notes, even though three prior instances of market volatility and related hedging activity proved otherwise. *Id.* at *4 & *7. Here, there is no allegation that Overstock or Byrne introduced inaccurate information into the market with respect to the digital dividend. To the contrary, as this Court has already recognized, the terms for the digital dividend were accurately and fully disclosed. Overstock announced its intent to issue the dividend and accurately detailed all the related risks, including the SEC regulatory risk and execution risk that the issuance might not happen as scheduled or intended. In addition, Overstock disclosed to shareholders or potential recipients of the dividend the legal restrictions on transferability prior to registration, as required by SEC Rule 144, 17 C.F.R. § 230.144. *See In re Overstock Sec. Litig.*, 2020 WL 5775845, at *10.

Consistent with Overstock's briefing, which Byrne joins in full, the AC does not cure any of the deficiencies previously identified by the Court. Notwithstanding the new confidential witness to replace its discredited one and reframed allegations, application of this Court's prior legal analysis to the instant pleadings compels the same result. The AC should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiff Fails to State a Claim in Count 3 against Byrne for Control Person Liability under Section 20(a)

The Court previously dismissed Count 3 against Byrne because Plaintiff failed to establish a primary violation of the securities laws and because "Plaintiff has not pled supporting facts demonstrating . . . that Byrne would be anything other than a primary violator." *In re Overstock Sec. Litig.*, 2020 WL 5775845, at *13. Nothing has changed.

#### 1. Plaintiff Has Failed to Establish a Primary Violation of the Securities Laws

Plaintiff still has not established a primary violation of the securities laws as detailed in Overstock's briefing, which more than undermines Plaintiff's minimal assertion that the AC's "new allegations further establish that [sic] the predicate acts." (Opp. at 43 n.41.)

#### 2. Even if There Had Been a Primary Violation, Plaintiff Alleges Byrne was a Primary Violator, Precluding Liability as a Control Person

Beyond that, Plaintiff also has not "pled supporting facts demonstrating . . . that Byrne would be anything other than a primary violator." *In re Overstock Sec. Litig.*, 2020 WL 5775845, at *13. Plaintiff doesn't even mention, much less argue, the point – instead noting only that "[a]llegations of Iverson, Nielsen, and Byrne's regular communications and appearances on behalf of the Company demonstrate that they exercised 'some indirect means of discipline or influence' and have ultimate management authority over any primary violator." (Opp. at 43 n.41 (quoting *Lane v. Page*, 649 F. Supp. 2d 1256, 1306 (D.N.M. 2009).) Because Plaintiff still

alleges that Byrne was a primary violator, Plaintiff's Section 20(a) claim against him still fails as a matter of law.

### B. Plaintiff Fails to State a Claim in Count 4 against Byrne under Section 20A

While Plaintiff "alleges that Byrne is liable for insider trading in violation of Section 20A," Plaintiff again does not argue the point, merely noting that it seeks to "preserve the issue." (Opp. at 43 n.41.) Since Plaintiff does not advance arguments in support of its Section 20A claim, the Court should dismiss it as abandoned. *See, e.g., Chapman v. Mueller Water Prod., Inc.*, 466 F. Supp. 3d 382, 406 n.7 (S.D.N.Y. 2020) (observing that a claim is abandoned where the opposition does not advance arguments to support the claim); *Holmes v. Cty. of Montgomery*, No. 1:19cv0617, 2020 WL 1188026, at *4 (N.D.N.Y. Mar. 12, 2020) ("at the motion to dismiss stage . . ., a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.")[2] But even if the claim weren't abandoned, Plaintiff's minimal effort backfires as the two cases Plaintiff cites actually bolster the Court's initial decision that Plaintiff cannot succeed on its Section 20A cause of action against Byrne.

#### 1. Plaintiff Has Not Pled a Predicate Violation of the Exchange Act

Plaintiff begins by "not[ing] Byrne's agreement that 20A does not clearly require an independent violation of the securities laws[.]" (Opp. at 43 n.41.) However, as the Court previously ruled, "the language of the statute is clear and courts appear to be in agreement that a predicate violation of the securities laws and regulations is required for a Section 20A claim to survive a motion to dismiss." *In re Overstock Sec. Litig.*, 2020 WL 5775845, at *13 (citing *In re*

---

[2] *See also Killoran v. Westhampton Beach Sch. Dist.*, No. 18-cv-3389(JS)(SIL), 2020 WL 1325572, at *5 (E.D.N.Y. Feb. 12, 2020) (collecting cases), *rep. & rec. adopted*, 2020 WL 1433647 (E.D.N.Y. Mar. 11, 2020); *cf. Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (holding that a party abandons a claim by only making a passing reference to a ruling or raising it in a perfunctory manner without advancing any supporting argument or authority).

4

*Crocs Sec. Litig.*, 774 F. Supp. 2d 1122, 1155-56 (D. Colo. 2011)). Indeed, the cases Plaintiff cites in its footnote regarding Section 20A reach the same conclusion:

- "'[C]ourts have interpreted § 20A as requiring the plaintiff to plead a predicate violation of the 1934 Act or its rules and regulations,' such as a Section 10(b) claim." *In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-cv-00707-DBB-DBP, 2021 WL 977770, at *24 (D. Utah Mar. 16, 2021) (quoting *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1194 n.5 (10th Cir. 1998)).[3]

- "To plead a § 20A cause of action, the plaintiff must . . . allege a requisite independent, predicate violation of the Exchange Act (or its rules and regulations), *e.g.*, § 10(b)[.]" *In re Enron Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 600 (S.D. Tex. 2003).

There is no reason for the Court to depart from its prior ruling. Because Plaintiff's Section 20A claim lacks such an independent predicate violation, the Court should again dismiss the claim.

### 2. Plaintiff Is Not a Contemporaneous Trader Under Section 20A Because it Purchased Overstock Shares Before Byrne's Sales

In addition, Section 20A creates a private right of action for only contemporaneous traders. This Court has already ruled that "Plaintiff traded before Byrne, the purported insider, which negates a Section 20A claim." *In re Overstock Sec. Litig.*, 2020 WL 5775845, at *14. Making no argument on the issue, Plaintiff merely "respectfully reasserts its trading is contemporaneous." (Opp. at 43 n.41.) Yet again, Plaintiff's case law confirms that this Court's initial decision was correct. *Myriad Genetics* involved a stock purchase "two days after Defendant . . . sold stock." *Myriad Genetics*, 2021 WL 977770, at *24. In finding that such "transactions were sufficiently contemporaneous," the *Myriad Genetics* court went out of its way to distinguish this very case as "finding no contemporaneous trade where Defendant's 'stock sales occurred three to five calendar days *after* Plaintiff purchased Overstock shares and after the alleged short squeeze was over." *Id.* at *25 n.310 (quoting *In re Overstock Sec. Litig.*, 2020 WL

---

[3] Plaintiff relies heavily on *Myriad Genetics* beyond just the Section 20A claim. But, as Overstock explains in its reply brief, Plaintiff's efforts to equate this case to *Myriad Genetics* ignores or distorts significant differences between the two lawsuits. (*See* Overstock's Reply Br.)

5775845, at *14 (emphasis in original)). Plaintiff fares no better under *Enron*, which expressly rejects Plaintiff's position: "the plaintiff's trades must have taken place after the challenged insider trading transaction." *In re Enron Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d at 600 (citing *Alfus v. Pyramid Technology Corp.*, 745 F. Supp. 1511, 1522 (N.D. Cal. 1990)). Thus, the Court should again dismiss Plaintiff's Section 20A claim on the ground that Plaintiff was not a contemporaneous trader.

### C. Plaintiff Continues to Misrepresent Byrne's Statements, Draw False Connections, and Make Unsupported Arguments

As stated above, Byrne joins Overstock's briefing in support of dismissal, which easily dispatches Plaintiff's last-minute attempts to gin up allegations from a new confidential witness and recharacterize prior allegations in Counts 1 and 2 as meeting legal standards they do not. However, Plaintiff's continued mischaracterization of Byrne's public statements, which can only be construed as intentional at this stage, deserves special mention. The allegations—under any reading—are insufficient to salvage any aspect of Plaintiff's case. But even so, the Court should not countenance such gamesmanship and manipulation with respect to the record, particularly where prior briefing, and indeed the Court, have already pointed out Plaintiff's misleading quotations.

To take one flagrant example that the Court itself discussed in its prior memorandum decision and order (Dkt. 103 at 22) and Byrne addressed in his last round of briefing (Dkt. 95 at 2-3), Plaintiff stunningly reprises this illusory reference to Byrne's "admissions that he timed his sales to benefit from the squeeze." (Opp. at 28, 33, 38, & 39.) Plaintiff cites to paragraphs 107 and 130 of the AC—formerly paragraph 93 of the original complaint (*see* Dec. of J. Lombard, Exh. R [Dkt. 126-18])—as support for its assertion that Plaintiff "intended to sell 200,000 shares of his stock 'into the volume (and price) swell that the Locked-up Dividend would cause." (Opp.

6

at 38.)[4] Yet the deliberately truncated quote Plaintiff attributes to Byrne as some supposed admission of a larger scheme is patently false.

The actual quote is from an October 2019 blog post of Byrne that references a company-approved Rule 10b5-1 trading plan that he at one time considered signing. This plan contemplated a sale of 200,000 of his shares in September and the remainder periodically over time, but Byrne never executed the plan and the stock sale never came into fruition.[5] Far from admitting that Byrne "intended to sell his stock 'into the volume' (and price) swell that the Locked-up Dividend would cause" as alleged, the blog post makes clear that Byrne didn't know what the price would do under the hypothetical sale he was discussing:

> I long ago gave up trying to predict what the price of OSTK would do, but one thing I was certain of was that the volume had to expand the week before the dividend record date.[6]

In other words, instead of finding actual support for Plaintiff's assertion, one finds: (1) a reference to a hypothetical sale that never happened; (2) a reference to an irrelevant time period—the week before the dividend record date—when no trades by Byrne were actually made; and (3) an explicit denial from Byrne that he intended to sell into a price increase, as distinct from a volume increase. This is not good-faith argument. Instead, equating "volume"

---

[4] Paragraph 107 of the AC specifically alleges "that then-CEO Byrne – who was armed with all of this material non-public information regarding the short squeeze and his own imminent exit from the Company – secretly planned a sale of 200,000 shares of his stock to take advantage of "the volume we expected to pick up in mid-September" as the Locked-up Dividend's record date approached." (Am. Compl. ¶ 107 (emphasis in original).) And Paragraph 130 of the AC adds that "volume" is a "barely coded synonym for 'price'." (Am. Compl. ¶ 130.)

[5] *See* Patrick Byrne, When the SEC Leaks, Is the Result Insider Trading? DeepCapture (Oct. 19, 2019), available at https://www.deepcapture.com/2019/10/when-the-sec-leaks-is-it-insider-trading/ (last visited May 3, 2021).

[6] *Id*. (emphasis in original)

7

with "price" and arguing that these statements constitute the "admission" claimed by Plaintiff (Opp. at 28; Am. Compl. ¶ 130) is false and misleading.

Even assuming the AC pled an intent to sell shares prior to the announcement of the digital dividend (which it doesn't), it would still be irrelevant because there's no requirement to disclose a future intent to sell stock in any event. To be sure, as this Court has already recognized, "the law only requires executives to disclose stock sales two business days after they happen." *In re Overstock Sec. Litig.*, 2020 WL 577845, at *11 n.1; *see also* 17 C.F.R. § 240.16a-3(g)(1).

Moreover, there are no allegations that Byrne decided to sell the balance of his shares before the company announced the dividend on July 30, 2019. As the Court previously found, "[t]here is no evidence that when Defendants announced the dividend, Defendants knew that Byrne would be leaving Overstock or that Byrne intended to sell all of his common stock." *Id.* at *11. Plaintiff's contrary argument that the AC "plausibly alleges Byrne knew before July 30 that he was leaving Overstock" relies on Plaintiff's characterization of an unidentified blog post from Byrne purportedly stating that he "believed he would not be at the Company much longer," and Byrne's August 22, 2019 comments to Fox News that he "had an idea" that his departure "was coming since last July." (Opp. at 27-28 (citing Am. Compl. ¶¶ 97, 133).) Neither of these comments establish that Byrne or anyone else knew that his departure would coincide with the announcement of the digital dividend.[7] Nor does Byrne's alleged belief that "he would not be at the Company much longer" establish any concrete timeline for his departure given that his tenure

---

[7] Plaintiff also ignores that SEC regulations only require disclosure of a CEO's departure *after* notice of such departure. *See* Form 8-K Item 5.02(b).

with Overstock spanned "twenty years prior to the start of the Class Period." (Am. Compl. ¶ 213.)

Relatedly, the AC lacks *any* well-pled allegation connecting Byrne's departure to the issuance of the digital dividend. Indeed, the AC merely alleges that the dividend was announced approximately two weeks after Byrne purportedly learned that his relationship with Maria Butina would become public. (Am. Compl. ¶¶ 97, 205-06.) There are no confidential witness allegations or references to any documents or meetings suggesting that Overstock or Byrne planned the dividend around his departure, and "temporal proximity . . . without more" cannot "satisfy the requirements of Rule 9(b)." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001). It also makes no sense that Overstock would design the dividend, so Byrne could profit when the AC concedes that his "involvement in government matters" had the potential to "affect and complicate all manner of [Overstock's] business relationships." (Am. Compl. ¶ 132.)

## III. CONCLUSION

For the foregoing reasons, Byrne respectfully requests that the Court enter an order dismissing the entirety of Plaintiff's Amended Consolidated Complaint with prejudice and without further leave to amend.

RESPECTFULLY SUBMITTED: May 3, 2021

HOLLAND & HART LLP

/s/ Cory A. Talbot
Cory A. Talbot (#11477)
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
catalbot@hollandhart.com

Holly Stein Sollod (*pro hac vice*)
555 17th Street, Suite 3200
P. O. Box 8749
Denver, Colorado 80201-8749
Telephone: (303) 295-8000
hsteinsollod@hollandhart.com

MCGLINCHEY STAFFORD PLLC

/s/ Alfred D. Carry
Robert N. Driscoll (*pro hac vice*)
Alfred D. Carry (*pro hac vice*)
McGlinchey Stafford PLLC
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
Telephone: (202) 802-9999
Facsimile: (202) 403-3870
rdriscoll@mcglinchey.com
acarry@mcglinchey.com

*Attorneys for Defendant Patrick M. Byrne*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served this 3rd day of May 2021 through the court's CM/ECF system, which will send notification of this filing to all counsel of record.

/s/ Alfred D. Carry
Alfred D. Carry (*pro hac vice*)
*Attorneys for Defendant Patrick M. Byrne*